**RECORD NO. 11-4801**

*In The*

# United States Court of Appeals

### *For The Fourth Circuit*

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

## FRANESIOUR B. KEMACHE-WEBSTER,
## a/k/a Bryan Webster,

*Defendant – Appellant.*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND AT GREENBELT

─────────────

### REPLY BRIEF OF APPELLANT

─────────────

David W. Lease
SMITH, LEASE & GOLDSTEIN, LLC
11 North Washington Street, Suite 520
Rockville, Maryland 20850
(301) 838-8950

*Counsel for Appellant*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................iv

ARGUMENT ........................................................................................1

    I.    THE DISTRICT COURT ERRED IN DENYING KEMACHE-WEBSTER'S MOTION FOR ACQUITTAL WHERE THE ONLY THEORY PRESENTED TO THE JURY WAS THAT KEMACHE-WEBSTER WAS GUILTY OF THE COMPLETED (AS OPPOSED TO AN ATTEMPTED) VIOLATION OF 18 U.S.C. § 2422(B) BUT THE UNDISPUTED EVIDENCE AT TRIAL ESTABLISHED THAT KEMACHE-WEBSTER NEVER ACTUALLY COMPLETED A VIOLATION OF 18 U.S.C. § 2422(B) BY PERSUADING OR ENTICING A MINOR TO COMMIT AN ILLEGAL SEXUAL ACT ....................................................1

    II.    THE DISTRICT COURT ERRED IN DENYING KEMACHE-WEBSTER'S MOTION FOR ACQUITTAL BECAUSE THE ONLY THEORY PRESENTED TO THE JURY WAS THAT THE APPELLANT ENTICED A MINOR TO ENGAGE IN ILLICIT SEXUAL RELATIONS UNDER MARYLAND LAW AND THE UNDISPUTED EVIDENCE ESTABLISHED THAT THE ONLY INTENDED MEETING OR CONTACT BETWEEN KEMACHE-WEBSTER AND THE MINOR WOULD HAVE OCCURRED IN THE DISTRICT OF COLUMBIA............................................................................7

    III.    THE DISTRICT ERRED IN PREVENTING KEMACHE-WEBSTER FROM HIS THEORY OF THE CASE WHEN IT EXCLUDED FROM EVIDENCE ADDITIONAL PORTIONS OF VARIOUS REDACTED EMAILS PREVIOUSLY ADMITTED INTO EVIDENCE BY THE GOVERNMENT WHERE THE ADDITIONAL PORTIONS OF THE EMAIL WERE RELEVANT TO KEMACHE-WEBSTER'S THEORY OF THE CASE AND WOULD PLACE THE EMAILS IN CONTEXT ....................................................................11

i

A.   The District Court Denied Kemache-Webster a Meaningful Right to Put Forth His Defense ............................12

B.   The District Court's Error Was Not Harmless .........................14

IV.   THE DISTRICT COURT ERRED IN PERMITTING LAY OPINION TESTIMONY AS TO THE INTERPRETATION OF CERTAIN ALLEGED CODE WORDS CONTAINED IN THE VARIOUS EMAILS, LETTERS, AND PHONE CALLS WHICH WERE INTRODUCED AS EVIDENCE AT TRIAL, WHERE THE INTERPRETING WITNESS WAS NOT A PARTY TO THE CONVERSATIONS .............................................15

A.   Inspector Laughlin Lacked Personal Knowledge ....................16

B.   The Lay Opinion Improperly Usurped the Role of the Jury.....16

V.   THE DISTRICT COURT PROCEDURALLY ERRED IN SENTENCING KEMACHE-WEBSTER TO LIFE IMPRISONMENT BECAUSE THE COURT (1) IMPROPERLY DISREGARDED THE SENTENCING GUIDELINE RANGE; (2) RELIED UPON UNPROVEN RELATED CONDUCT; AND (3) FAILED TO PROPERLY EXPLAIN AND APPLY THE VARIOUS SENTENCING FACTORS SET FORTH IN 18 U.S.C. § 3553(A)............................18

A.   The District Court Procedurally Erred by Improperly Disregarding the Sentencing Guideline Calculation.................18

B.   The District Court Erred by Relying Upon an Unproven Allegation that Kemache-Webster had Previously Engaged in Sexual Relations with Nikki ...................................19

C.   The District Court Procedurally Erred by Failing to Explain and Apply the Various Sentencing Factors Described in 18 U.S.C. § 3553, Including the Health of Kemache-Webster, As Well As the Need to Avoid Unwarranted Sentencing Disparities .........................................22

CONCLUSION ...................................................................................................24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Beech Aircraft Corp. v. Rainey,
     488 U.S. 153 (1988)...........................................................................13

Chiarella v. United States,
     445 U.S. 222 (1980)...........................................................................11

Crane v. Kentucky,
     476 U.S. 683 (1986)...........................................................................12

Dunn v. United States,
     442 U.S. 100 (1979)..........................................................................6, 9

Gall v. United States,
     582 U.S. 38 (2007)..............................................................18, 19, 24

Holmes v. South Carolina,
     547 U.S. 319 (2006)...........................................................................12

Pennsylvania v. Ritchie,
     480 U.S. 39 (1987).............................................................................12

Rita v. United States,
     551 U.S. 338 (2007)...........................................................................23

United States v. Bailey,
     228 F.3d 637 (6th Cir. 2000) ..........................................................3, 5

United States v. Bartlett,
     576 F.3d 901 (7th Cir. 2009) ...........................................................21

United States v. Blum,
     62 F.3d 63 (2d Cir. 1995) ................................................................14

iv

United States v. Bradley,
        628 F.3d (7th Cir. 2010) .......................................................... 20-21

United States v. Dwinells,
        508 F.3d 63 (1st Cir. 2007)......................................................4, 9, 10

United States v. Engle,
        676 F.3d 405 (4th Cir. 2012) .................................................3, 4, 5, 6

United States v. Goetzke,
        494 F.3d 1231 (9th Cir. 2007) ......................................................... 4

United States v. Grinage,
        390 F.3d 746 (2d Cir. 2004) .......................................................16, 17

United States v. Johnson,
        627 F.3d 286 (4th Cir. 2010) ...........................................................16

United States v. Lee,
        603 F.3d 904 (11th Cir. 2010) .......................................................... 4

United States v. Lighty,
        616 F.3d 321 (4th Cir. 2010) ............................................................12

United States v. Lynn,
        592 F.3d 572 (4th Cir. 2010) ...........................................................20

United States v. Patten,
        397 F.3d 1100 (8th Cir. 2005) ..................................................7, 8, 10

United States v. Peoples,
        250 F.3d 630 (8th Cir. 2001) ............................................................17

United States v. Peters,
        512 F.3d 787 (6th Cir. 2009) ...........................................................23

United States v. Pierson,
        544 F.3d 933 (8th Cir. 2008) ............................................................ 4

United States v. Schroder,
    536 F.3d 746 (7th Cir. 2008) ...................................................................21, 23

United States v. Sheehan,
    512 F.3d 621 (D.C. Cir. 2008).................................................................14

United States v. Stever,
    603 F.3d 747 (9th Cir. 2010) ........................................................12

United States v. Thomas,
    410 F.3d 1235 (10th Cir. 2005) ...................................................... 4

United States v. Thompson,
    25 F.3d 1558 (11th Cir. 1994) ......................................................13, 15

United States v. Williams,
    553 F.3d 1073 (7th Cir. 2009) ...................................................23

United States v. Zawada,
    552 F.3d 531 (7th Cir. 2008) ................................................... 4

## STATUTES

18 U.S.C. § 2422(b) ...........................................................................passim

18 U.S.C. § 3553 ...........................................................................22

18 U.S.C. § 3553(a) ...........................................................18, 22, 23, 24

## RULES

Fed. R. Crim. P. 51.......................................................................20

Fed. R. Crim. P. 51(b)...................................................................20

Fed. R. Evid. 106 .......................................................................13

Fed. R. Evid. 401.......................................................................13

Fed. R. Evid. 701.......................................................................16

## **OTHER AUTHORITY**

7 J. Wigmore *Evidence at Trials in Common Law* § 2113 (J. Chadbourn rev. 1978) ........................................................................13

# ARGUMENT

I.  THE DISTRICT COURT ERRED IN DENYING KEMACHE-
    WEBSTER'S MOTION FOR ACQUITTAL WHERE THE ONLY
    THEORY PRESENTED TO THE JURY WAS THAT KEMACHE-
    WEBSTER WAS GUILTY OF THE COMPLETED (AS OPPOSED
    TO AN ATTEMPTED) VIOLATION OF 18 U.S.C. § 2422(B) BUT
    THE UNDISPUTED EVIDENCE AT TRIAL ESTABLISHED
    THAT KEMACHE-WEBSTER NEVER ACTUALLY
    COMPLETED A VIOLATION OF 18 U.S.C. § 2422(B) BY
    PERSUADING OR ENTICING A MINOR TO COMMIT AN
    ILLEGAL SEXUAL ACT.

Because the only theory of guilt presented in this case was that of a "completed violation" of 18 U.S.C. § 2422(b), the Government was required to prove the existence of the minor's mental state, *i.e.* that the minor (Nikki) was actually persuaded, induced, enticed or coerced to engage in illegal sexual activity with Kemache-Webster. (Opening Brief at p.17). It is undisputed that the Government failed to present any evidence of Nikki's mental state regarding whether she was actually persuaded, induced, enticed or coerced. Consequently, Kemache-Webster's conviction cannot stand. (Opening Brief at pp.17, 22).[1]

In an effort to overcome this lack of necessary evidence, the Government simply misstated Kemache-Webster's argument in its brief and then badly conflated

---

[1] The Government does not contend that it presented any evidence of Nikki's mental state at trial, but rather, erroneously argued that the Government was not required to prove Nikki's mental state to establish a completed violation of § 2422(b) (Government's Brief at 24, 27). As discussed below, this argument is without merit and refuted by the plain language of § 2422(b).

1

the proof necessary to prove an attempted violation with that of the completed offense under § 2422(b). First, the Government misstated Kemache-Webster's argument as follows: "Webster asserts that § 2422(b) criminalizes the completion of a sexual act, and therefore requires evidence that the intended victim was persuaded, coerced, induced, or enticed." (Government Brief at pp. 22-23). In fact, Kemache-Webster does not argue that § 2422(b) requires a completed sexual act, but rather, it is the plain language of the statute [18 U.S.C. § 2422(b)] which demands proof of the minor's mental state (i.e. that the minor was actually persuaded, induced, enticed or coerced).[2]

18 U.S.C. § 2422(b) provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States *knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years*, to engage in prostitution or any sexual activity for which any

---

[2] In his opening brief, Kemache-Webster argued: "At trial, there was no evidence presented that Kemache-Webster actually persuaded, induced, enticed or coerced Nikki to engage in sexual activity in the State of Maryland." (Opening Brief at p. 17). Kemache-Webster then observed the undisputed fact that no sexual contact had occurred as a result of the communications at issue because Kemache-Webster was incarcerated. This undisputed fact was not offered in support of an argument that the completion of the sexual act was required to prove a § 2422(b) violation, but to demonstrate that if a sexual act had occurred as a result of the communications this would constitute evidence that the minor was actually persuaded. Kemache-Webster then noted that no evidence whatsoever was presented at trial that Nikki was actually persuaded, and, in fact, the testimony of Nikki's mother suggested that Nikki was not persuaded. (Opening Brief at p.17). The Government did not dispute this lack of evidence in its brief.

2

> person can be charged with a criminal offense, or *attempts to do so*, shall be fined under this title and imprisoned not less than 10 years or for life.

(emphasis supplied). This statute sets forth in explicit terms both a completed and attempted version of the offense. Each verb of the statutory *actus reus* (persuades, induces, entices or coerces) has a person as its object and the statutory text leaves no doubt that the personal object is that of the minor. Consequently, in order to prove a completed violation, as opposed to an attempt, the Government must prove the mental state of the minor, i.e. that the minor was actually persuaded, etc. 18 U.S.C. § 2422(b).

The Government's argument to the contrary simply ignores the plain language of the statute and badly confuses the difference between the evidence required to establish an attempt and the evidence required to establish a completed violation of the offense. This confusion is demonstrated by the simple fact that each and every case cited by the Government is an attempt case which merely describe the requirements necessary to prove an attempted violation of § 2422(b). See United States v. Engle, 676 F.3d 405, 419 (4th Cir. 2012) ("Engle was convicted under § 2422(b) for attempted enticement of K.M.") (emphasis supplied); United States v. Bailey, 228 F.3d 637, 638 (6th Cir. 2000) ("Defendant… appeals his conviction under 18 U.S.C. § 2422(b) for using the Internet to attempt to persuade, induce, entice or coerce minors to engage in illegal sexual activity") (emphasis supplied);

United States v. Lee, 603 F.3d 904, 907 (11th Cir. 2010) ("The question presented by this appeal is whether sufficient evidence supports the conviction of [the defendant] for attempted enticement of a minor…") (emphasis supplied); United States v. Pierson, 544 F.3d 933, 935 (8th Cir. 2008) ("[Defendant] was charged with… attempting to induce a child to engage in criminal sexual activities…") (emphasis supplied); United States v. Dwinells, 508 F.3d 63, 68 (1st Cir. 2007) ("A federal grand jury indicted the appellant on three counts of attempted enticement of a minor") (emphasis supplied); United States v. Thomas, 410 F.3d 1235, 1238 (10th Cir. 2005) ("[Defendant] was convicted… of two counts of using interstate commerce to attempt to persuade a minor to engage in an illegal sexual act…") (emphasis supplied); United States v. Goetzke, 494 F.3d 1231, 1232 (9th Cir. 2007) ("A jury found [defendant] guilty of attempting to persuade,… a minor,… to engage in unlawful sexual activity") (emphasis supplied); United States v. Zawada, 552 F.3d 531, 532 (7th Cir. 2008) ("[W]e must decide what it takes to commit the offense of attempting to violate the statute that prohibits knowingly persuading… a minor to engage in criminal sexual activity") (emphasis supplied).

A close reading of each of these cases actually supports Kemache-Webster's argument that the completed offense requires proof of the minor's mental state. For example, the Government cites to this Court's decision in Engle, 676 F.3d at 411-412, for the proposition "[§]2422(b) was designed to protect children from the act of

solicitation itself, and it criminalizes an intentional attempt to achieve a *mental* state – a minor's assent – regardless of the accused's intentions [concerning] the actual consummation of the sexual activities with the minor."  (Government Brief at p. 23) (emphasis supplied).  Engle only addressed the attempt offense and must be read accordingly.  Engle, however, expressly provided that the object of the attempt is to "achieve a *mental* state – a minor's assent—"  Engle, 676 F.3d at 419.  Thus, to actually complete a violation of § 2422(b), one would have to achieve the object of the attempt, which is the "*mental* state – a minor's assent."

Likewise, Bailey also supports Kemache-Webster's position.  The Government cites Bailey, 228 F.3d at 639, for the proposition that "Congress has made a clear choice to criminalize persuasion **or** the attempt to persuade not the performance of the sexual acts themselves."  (Government Brief at p. 24) (emphasis supplied).  Again, Bailey is an attempt case and the statement appears early in the opinion.  This statement sets forth the two methods which violate § 2422(b).  The persuasion of a minor (the completed offense) is criminalized as is the attempt to persuade the minor (the attempted offense).  After this general statement, the Bailey court focused exclusively on the issues involving attempt, *i.e.* the defendant's intent, and whether the defendant took a substantial step towards completing the offense.  Bailey, 228 F.3d at 639-640.  However, this general statement of the law precisely

delineates the difference between the completed and the attempted versions of the offense and is consistent with Kemache-Webster's position.

The Government's confusion regarding the requirements between an attempted and a completed violation of § 2422(b) reaches its crescendo in the following passage:

> In each of these cases, the court focused on the actions of the defendant, not on any requirement of response from the intended victim or sexual conduct between the defendant and the victim.

(Government Brief at p. 24). The obvious response to the Government's argument is that in each of the cases cited, the court was focusing only on an attempted violation of § 2422(b). In an attempt case, it is only the actions of the defendant which are relevant because the Government must prove that the defendant intended the completion of the offense and that the defendant took a substantial step toward achieving that intent. Engle, 676 F.3d at 419-420.

Whereas in the completed offense, the achievement of a mental state (*i.e.* the minor's assent) is an element that needs to be proven in addition to the defendant's intent. 18 U.S.C. § 2422(b). Because no attempt theory was presented in Kemache-Webster's case,[3] and there was no evidence that the minor, Nikki, was actually

---

[3] The Government cannot seek and this Court may not affirm based on an attempt theory which was never presented at trial. Dunn v. United States, 442 U.S. 100, 107 (1979); (Opening Brief at pp. 20-22).

persuaded, induced, enticed or coerced, as conceded by the Government, Kemache-Webster's conviction must be reversed.

II.   THE DISTRICT COURT ERRED IN DENYING KEMACHE-WEBSTER'S MOTION FOR ACQUITTAL BECAUSE THE ONLY THEORY PRESENTED TO THE JURY WAS THAT THE APPELLANT ENTICED A MINOR TO ENGAGE IN ILLICIT SEXUAL RELATIONS UNDER MARYLAND LAW AND THE UNDISPUTED EVIDENCE ESTABLISHED THAT THE ONLY INTENDED MEETING OR CONTACT BETWEEN KEMACHE-WEBSTER AND THE MINOR WOULD HAVE OCCURRED IN THE DISTRICT OF COLUMBIA.

In his opening brief, Kemache-Webster argued that because the jury was instructed that the alleged intended sexual activity violated Maryland law,[4] the Government was required to prove that Kemache-Webster intended to persuade Nikki to engage in sexual activity within the borders of Maryland.  (Opening Brief at p. 22-25).  The Government challenged this argument by asserting that since Nikki "received the communications in Maryland… therefore Maryland was the proper standard upon which to base liability under Section 2422(b)."  (Government's Brief at p. 31).  This overly broad theory of liability championed by the Government was previously rejected in United States v. Patten, 397 F.3d 1100 (8th Cir. 2005).

In Patten, the Eighth Circuit was presented with a case in which the attempted sexual activity would have been illegal under North Dakota law but would not have

---

[4]  The District Court instructed the jury that: "[t]he third element which the government must prove beyond a reasonable doubt is that this sexual activity would violate Maryland law." (J.A. 313).

7

violated Minnesota law. Thus, the jurisdiction in which the defendant intended to

persuade the minor to engage in sexual activity was critical. The court stated:

> The United States must prove that the defendant intended
> to persuade a minor to engage in an unlawful act… the
> defendant could only be criminally prosecuted for an
> unlawful sexual act under North Dakota law <u>if the sexual
> activity occurred or was intended to occur within the
> borders of the State of North Dakota.</u>

<u>Id.</u> 397 F.3d at 1103 (emphasis supplied). The court then focused on the

government's argument (which is the same argument presented here):

> The government argues that the evidence in this regard
> was obviously sufficient because § 2422(b) is an interstate
> communication crime that was 'complete' when Patten
> used the Internet in an attempt to persuade "Sarah" to
> engage in sexual activity that would be illegal in North
> Dakota, where she [Sarah] received the communication.
> <u>But this formulation improperly broadens the plain
> meaning of the statute.</u>  To take an obvious example,
> Patten would not have violated § 2422(b) if his interstate
> communication had explicitly urged "Sarah" to come to
> Minnesota to engage in lawful sexual activity with him,
> even though "Sarah" received those communications in
> North Dakota.

<u>Id.</u> (emphasis supplied). The court then addressed the sufficiency of the evidence:

> Thus, Patten's conviction must be affirmed if the evidence
> was sufficient to permit a reasonable jury to infer <u>that he
> intended to persuade "Sarah" to engage in sexual activity
> in North Dakota</u>.  The jury could resolve that issue of fact
> without having to decide the additional question of where
> Patten in fact intended the sexual activity to occur.
>
> Viewed in this light, we conclude that the evidence was
> sufficient to support the jury's verdict. Patten and "Sarah"

8

> never discussed where they might engage in sexual activity. When "Sarah" said she did not have a car available, Patten said he would come to North Dakota to meet her there in 10 to 15 minutes. The jury could reasonably infer from this circumstance <u>that Patten intended to persuade "Sarah" to engage in sexual activity in North Dakota.</u>

<u>Id.</u> (emphasis supplied).

In the present case, the only communications in which Kemache-Webster discussed even meeting Nikki involved her meeting him at the Greyhound bus station upon his release from the Bureau of Prisons. The bus station was located in the District of Columbia. In addition, the other discussions involved Kemache-Webster and Nikki finding an apartment in, or moving back into a previous apartment, located within the District of Columbia. Thus, there was no evidence that Kemache-Webster ever intended to persuade Nikki to perform any sexual acts within the borders of the State of Maryland after his release.

Similarly, in <u>Dwinells</u>, 508 F.3d at 72 (emphasis supplied),[5] the First Circuit specifically held:

> In this instance, the indictment accused the appellant of having sought to entice his target to commit sexual acts <u>rendered illegal by Massachusetts law</u>… Consequently,

---

[5] The Government noted that unlike <u>Dwinells</u> "the indictment in this case did not specify a particular jurisdiction whose laws would have been violated . . .." (Government Brief at p. 33 n.11). However, since the theory presented by the Government and included in the jury instructions specifically addressed an alleged violation of Maryland law, that is the only theory available on appeal. <u>See</u> (Opening Brief at 22-24); <u>Dunn</u>, 422 U.S. at 107.

> the district court instructed <u>the jury that it could not find the appellant guilty on a particular count unless it found beyond a reasonable doubt that he attempted to entice the minor in question to perform unlawful sexual acts within Massachusetts.</u>

The Government seeks to distinguish <u>Dwinells</u> by stating that the Government could have alternatively alleged and sought to prove that the sexual conduct was illegal under South Carolina or Ohio law. (Government Brief at 33). Even if the Government's distinction had merit, it would not effect the analysis for this appeal. For the Government to have proceeded under such alternative theory of guilt, the <u>Dwinells</u> holding would have specifically required that there be evidence that the defendant sought to persuade the minor to perform unlawful sexual acts within thew borders of those alternative jurisdictions and that the jury be instructed the defendant attempted to entice the minor to perform illegal sexual acts within the borders of those alternative jurisdictions.

Consequently, both <u>Patten</u> and <u>Dwinells</u> reject the Government's argument and require that since the theory presented to the jury was that the intended sexual activity would violate Maryland law, it was incumbent upon the Government to prove that Kemache-Webster intended to persuade Nikki to perform those acts within

the borders of Maryland.[6]  Because the Government failed to produce any such

evidence, Kemache-Webster's conviction must be reversed.

III.  **THE DISTRICT ERRED IN PREVENTING KEMACHE-WEBSTER FROM HIS THEORY OF THE CASE WHEN IT EXCLUDED FROM EVIDENCE ADDITIONAL PORTIONS OF VARIOUS REDACTED EMAILS PREVIOUSLY ADMITTED INTO EVIDENCE BY THE GOVERNMENT WHERE THE ADDITIONAL PORTIONS OF THE EMAIL WERE RELEVANT TO KEMACHE-WEBSTER'S THEORY OF THE CASE AND WOULD PLACE THE EMAILS IN CONTEXT.**

At trial, Kemache-Webster sought to defend the Government's case against

him by arguing that his communications with Nikki were part of a ploy whereby he

pretended to be Nikki's husband because Kemache-Webster believed that Nikki

would only respond to him by playing this role.   Kemache-Webster was

desperately trying to keep in touch with Nikki in order to keep her out of trouble.

(J.A. 35-36).  The defense theory would negate Kemache-Webster's criminal intent

under § 2422(b), and therefore, was directly relevant to the issues in his trial.

However, the District Court prevented Kemache-Webster from introducing

redacted portions of various email exhibits, as well as establishing through Nikki's

mother that Nikki had a history of insolent behavior which would have

---

[6] The Government for the first time in this case suggested that "[h]ad the District Court so instructed the jury, evidence would have supported a verdict based on either Maryland or District of Columbia law . . .." (Government Brief at p. 33, n. 12).  However, the District Court did not so instruct the jury regarding any alleged violation of District of Columbia law.  Consequently, this Court "cannot affirm a criminal conviction on the basis of a theory not presented to the jury." Chiarella v. United States, 445 U.S. 222, 236 (1980); (Opening Brief at pp. 20-22).

corroborated Kemache-Webster's defense.  By preventing Kemache-Webster from putting forth this relevant evidence, the District Court denied Kemache-Webster a meaningful opportunity to present a complete defense as required by <u>Holmes v. South Carolina</u>, 547 U.S. 319, 324 (2006) (citing <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986)).  As a Constitutional matter, a defendant's right to present a defense "includes, 'at a minimum,… the right to put before a jury evidence that might influence the determination of guilt'."  <u>United States v. Stever</u>, 603 F.3d 747, 755 (9th Cir. 2010) (quoting <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 56 (1987)); <u>see</u> <u>also</u> <u>United States v. Lighty</u>, 616 F.3d 321, 358 (4th Cir. 2010).

The Government's response to Kemache-Webster's argument was that his defense was simply "irrelevant and invalid" or that any error in excluding the evidence was harmless.  Both of these arguments are without merit.

A.    <u>The District Court Denied Kemache-Webster a Meaningful Right to Put Forth His Defense.</u>

The Government argued that "Nikki's behavior was wholly irrelevant to the charged offense and that the admissions of certain nonsexual discussions in the emails – some of which refer to Nikki's health, medical examination, and

medications, see e.g. J.A. 665, 670, 674, 678 – were irrelevant and unnecessary under the rule of completeness."[7] (Government Brief at p. 38).

What the Government's argument ignores is that relevance[8] must be measured by the proffered defense theory, not just the Government's theory of the case. Kemache-Webster's defense presented a theory which, if accepted by the jury, would have negated his alleged criminal intent to persuade, etc. illegal sexual contact with Nikki. While the Government may not think much of this defense, it does not render the defense "invalid" nor does it provide the means to exclude the evidence in support of the defense. See United States v. Thompson, 25 F.3d 1558, 1564 (11th Cir. 1994) ("Even if Thompson's testimony regarding the alleged

_____

[7] In its brief, the Government only addressed the evidentiary rule of completeness set forth Fed. R. Evid. 106. However, Kemache-Webster's argument focused on the "common law 'rule of completeness'" which is broader than the evidentiary rule. (Opening Brief at p. 30-32); see Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 171 (1988). In Beech Aircraft Corp., the Supreme Court described the common law rule of completeness as:

> '[T]he opponent, against whom a part of an utterance has been put in, may in his turn complete it by putting in the remainder, in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance.

Id., quoting 7 J. Wigmore *Evidence at Trials in Common Law* § 2113 p. 653 (J. Chadbourn rev. 1978).

[8] In its simplest form, evidence is relevant if it has any tendency to persuade the jury of the existence (or non-existence) of some fact that is germane to the trial. See Fed. R. Evid. 401.

immunity agreement was not credible, as the government asserts and the district court found, it is the jury's, not the district court's, function to determine questions of credibility…") (Defendant's conviction was reversed because trial court excluded the purported reasons the defendant possessed a gun, thereby preventing the defendant from pursuing his theory of the case). Thus, the District Court erred in excluding this evidence.

B.    The District Court's Error Was Not Harmless.

In arguing that any error in excluding either the unredacted emails or testimony regarding Nikki's prior bad behavior was harmless, the Government only referred to cases dealing with the application of harmless error generally. The Government failed to address any of the specific cases cited by Kemache-Webster in his opening brief, which deal with harmless error under the circumstances presented in the instant case – namely, where a defendant was denied the opportunity to present a complete defense.

These cases provide that "[w]hen as happened in this case, a defendant is prevented from offering crucial evidence in her own defense, it can hardly be concluded that the trial errors are harmless." United States v. Sheehan, 512 F.3d 621, 633 (D.C. Cir. 2008); see also United States v. Blum, 62 F.3d 63, 69 (2d Cir. 1995) (holding that erroneously excluding testimony that support appellant's defense was not harmless error because the defense "went to the core of the

14

prosecution's case"); <u>Thompson</u>, 25 F.3d at 1564.  This is not simply a case of some insignificant evidence erroneously omitted but strikes at the core of Kemache-Webster's constitutional due process right to a fair trial.  Kemache-Webster had the right to put on a defense (which would have negated an essential element of the Government's case), and when that right was denied to him, the resulting error was not harmless.

IV.    THE DISTRICT COURT ERRED IN PERMITTING LAY OPINION TESTIMONY AS TO THE INTERPRETATION OF CERTAIN ALLEGED CODE WORDS CONTAINED IN THE VARIOUS EMAILS, LETTERS, AND PHONE CALLS WHICH WERE INTRODUCED AS EVIDENCE AT TRIAL, WHERE THE INTERPRETING WITNESS WAS NOT A PARTY TO THE CONVERSATIONS.

In his opening brief, Kemache-Webster argued that the District Court improperly admitted lay opinion testimony of Inspector Laughlin as to the meaning of purported nicknames and alleged code words contained in various communications between Kemache-Webster and Nikki.  (Opening Brief at p. 35-39).   In particular, Inspector Laughlin did not participate in the parties' communications but merely reviewed them after the fact.  As such, Kemache-Webster argued that the Inspector lacked the appropriate level of personal knowledge and that the lay opinion usurped the jury's function in that it was not helpful in providing a clear understanding of the determination of a fact or issue. (Opening Brief at p. 38-39).

15

A.    <u>Inspector Laughlin Lacked Personal Knowledge.</u>

In its brief, the Government only addressed the personal knowledge issue and thus, by implication, conceded Kemache-Weber's argument that the introduction of this opinion evidence usurped the jury's function.  On the personal knowledge issue, the Government simply contended that an investigator can base his opinions upon his *post hoc* assessment of communications in which he did not participate.  This argument was rejected by this Court in <u>United States v. Johnson</u>, 627 F.3d 286, 292 (4th Cir. 2010).

B.    <u>The Lay Opinion Improperly Usurped the Role of the Jury.</u>

In presenting its harmless error argument, The Government actually conceded that the admission of the lay opinion improperly usurped the role of the jury because the lay opinion was not helpful as required by Fed. R. Evid. 701 (A lay opinion is only admissible if the opinion is "helpful to determine a fact in issue").  The Government argued:

> There was substantial independent evidence through the various emails read into evidence that provided the jury with the meaning of the words… Read in context the meaning of [the words] in the communication was clear.

(Government Brief at p. 45).  If, as the Government contends, the meaning of the words was clear, then the testimony of Inspector Laughlin could not, by definition, have been helpful to the jury, and the admission of this lay opinion thereby usurped the role of the jury.  <u>See</u> <u>United States v. Grinage</u>, 390 F.3d 746, 749-750 (2d Cir.

16

2004); <u>United States v. Peoples</u>, 250 F.3d 630, 641-642 (8th Cir. 2001).  Thus, the Government was able to present its closing argument disguised as improper lay opinion testimony, thereby blurring the role between evidence and advocacy. <u>See</u> <u>Grinage</u>, 390 F.3d at 750 (To allow this type of lay opinion, "there would be no need for the trial jury to review personally any evidence at all. The jurors could be 'helped' by a summary witness for the Government, who could not only tell them what was in the evidence but tell them what inferences to draw from it. That is not the point of lay opinion evidence").

Moreover, Inspector Laughlin had previously testified regarding the nature of his investigation which included personal interviews of the witnesses including Nikki and consultation with other law enforcement officers. (J.A. 66-67). Consequently, "the risk that [Inspector Laughlin] was testifying based upon information not before the jury, including hearsay, or at the least, that the jury would think he had knowledge beyond what was before them, is clear." <u>Id.</u> Thus, the admission of this lay opinion was error.

Contrary to the Government's contention, the this error was not harmless in that the use of Inspector Laughlin as a summary-type witness allowed the Government to present its argument to the jury disguised as evidence, thereby leading to the increased risk that the jury would be swayed by the agent's opinion, rather than the jury's own interpretation of the communications. <u>Id.</u> at 751.

17

V.    THE DISTRICT COURT PROCEDURALLY ERRED IN SENTENCING KEMACHE-WEBSTER TO LIFE IMPRISONMENT BECAUSE THE COURT (1) IMPROPERLY DISREGARDED THE SENTENCING GUIDELINE RANGE; (2) RELIED UPON UNPROVEN RELATED CONDUCT; AND (3) FAILED TO PROPERLY EXPLAIN AND APPLY THE VARIOUS SENTENCING FACTORS SET FORTH IN 18 U.S.C. § 3553(A).

A.    <u>The District Court Procedurally Erred by Improperly Disregarding the Sentencing Guideline Calculation.</u>

The District Court improperly disregarded the Sentencing Guideline calculation when it explicitly stated:

> No matter what errors there may have been in my calculation of the Guidelines, I am simply declaring that I consider a variant sentence to be the minimum that would be appropriate in this case and <u>whether the offense level is two or 90, I would reach the exact same sentence.</u>

(J.A. 586-587) (emphasis supplied). The Government argued that despite the District Court's explicit statement that it would disregard the offense level (whether it was two or ninety), the District Court was only explaining why a guideline sentence was insufficient in this case. (Government Brief at p.48). However, the plain language utilized by the District Court provides that no matter what offense level was calculated in this case, it would have given the exact same sentence, which explicitly violates the Supreme Court's holding in <u>Gall v. United States</u>, 582 U.S. 38, 50 (2007). To accept the Government's argument would allow a district court judge to elude substantive reasonableness review of a defendant's sentence by merely stating that no matter the guideline calculation, the

18

only just sentence in a particular case is the sentence that the District Court judge issued. Consequently, in the instant case, the Government essentially endorses an end-run around the requirement of <u>Gall</u>, which would render this Court substantive reasonableness review meaningless.[9] As such, the Government argument should be rejected.

B.  <u>The District Court Erred by Relying Upon an Unproven Allegation that Kemache-Webster had Previously Engaged in Sexual Relations with Nikki.</u>

The Government does not dispute that the District Court failed to make the required factual finding that the alleged uncharged, unproven "related conduct" actually occurred by a preponderance of the evidence. Rather, the Government challenged whether Kemache-Webster properly preserved the issue for review. (Government Brief at p. 49-50). At sentencing, Kemache-Webster's counsel objected to the District Court considering the uncharged, unproven "related conduct." (J.A. 572). The District Court then ruled that it could consider the conduct but never made any finding by a preponderance of the evidence as to whether the conduct actually occurred. <u>Id.</u>

The Government argued that since Kemache-Webster did not object after the sentence had been issued, except to the District Court's ruling, that this issue presented on appeal was not properly preserved. This argument is without merit

---

[9] It should be noted that such a holding would effect the Government as much as the defense in future appeals of criminal sentences.

19

and has been expressly rejected by Fed. Rule Crim. P. 51 and this Court's holding in United States v. Lynn, 592 F.3d 572, 578-579 (4th Cir. 2010). In Lynn, this Court addressed the applicable standard of review for claims of procedural sentencing error. The court explained that a defendant who fails to object to a sentencing error after the court announces sentence has not necessarily failed to preserve his argument on that issue. Id. The court further held that a defendant may preserve his claim of procedural sentencing error if, prior to the court's ruling, the defendant "inform[s] the court… of the action the party wishes the court to take." Id. at 577-578 (quoting Fed. R. Crim. P. 51(b)). In Lynn, the court stated: "[b]y drawing arguments from Section 3553 for a sentence different from the one ultimately imposed, an aggrieved party sufficiently alerts the district court of its responsibility to render an individualized explanation addressing those arguments and thus preserves [his claim]." Id. at 578.

Here, Kemache-Webster explicitly objected to the District Court's reliance upon the uncharged, unproven "related conduct." In so doing, the District Court was alerted that it needed to at least make a factual finding that such conduct occurred by a preponderance of the evidence. Id. When the District Court sentenced Kemache-Webster without making the required factual finding, Kemache-Webster was not required to make a subsequent exception the District Court's sentence. Id.; see also United States v. Bradley, 628 F.3d 394, 399 (7th

20

Cir. 2010) ("The government's forfeiture argument fails, as we have made clear that a defendant need not 'complain about a judicial choice after it has been made'.") (citing United States v. Bartlett, 576 F.3d 901, 910 (7th Cir. 2009)).

The lack of a factual finding constituted procedural error, and therefore, Kemache-Webster's sentence should be vacated as procedurally unreasonable. See United States v. Schroder, 536 F.3d 746, 753 (7th Cir. 2008). As a factual matter, it must be remembered that Nikki never testified in this case and that only a victim impact statement was read to the court without any opportunity for cross-examination. While the admission of the victim impact statement may have had a sufficient indicia of reliability such that the court could consider it at sentencing, this does not relieve the sentencing court of the responsibility of weighing the information contained in the victim impact statement and determining if it satisfies the government's burden of proof; confusing standard for admissibility of evidence at sentencing with a standard of proof is "very serious error." Id.

Additionally, the Government makes much of Kemache-Webster's allocution by claiming that he admitted to prior sexual contact with Nikki. The Government claim regarding the allocution is without merit. There is nothing in Kemache-Webster's allocution which would amount to an admission of actual sexual contact. Rather, the allocution addressed Kemache-Webster regret for sending the inappropriate emails to Nikki. Given the nature of the email

21

communications for which Kemache-Webster had been found guilty and was being sentenced, the allocution was addressed to those issues.

Nonetheless, it is undisputed that the District Court did not make any factual finding that the alleged relevant conduct occurred based on Nikki's victim impact statement, Kemache-Webster's allocution, or any other evidence, and the Government cites to no authority which would relieve the District Court of the necessity of making this factual finding. Consequently, the failure to make this required factual finding constituted a procedural error, and Kemache-Webster's sentence should be vacated.

C.    <u>The District Court Procedurally Erred by Failing to Explain and Apply the Various Sentencing Factors Described in 18 U.S.C. § 3553, Including the Health of Kemache-Webster, As Well As the Need to Avoid Unwarranted Sentencing Disparities.</u>

In Kemache-Webster's opening brief, he explicitly noted that the sentencing court did not address certain factors described under 18 U.S.C. § 3553(a). In particular, Kemache-Webster argued that, as set forth in the sentencing memorandum, PSR, and discussions at the sentencing hearing, his health was a factor that the District Court should have considered when deciding whether to sentence Kemache-Webster to a below-guideline sentence. (J.A. 560; 700-701; 707). However, during sentencing the District Court failed to specifically address Kemache-Webster's health issues raised at sentencing and did not articulate a reason why this non-frivolous argument for leniency lacked merit. As such, the

District Court committed procedural error rendering Kemache-Webster's sentence unreasonable. <u>See</u> <u>Rita v. United States</u>, 551 U.S. 338, 356-357 (2007); <u>Schroder</u>, 536 F.3d at 756; <u>United States v. Williams</u>, 553 F.3d 1073, 1084-1085 (7th Cir. 2009) (sentence vacated because district court failed to consider defendant's disability and susceptibility to manipulation); <u>United States v. Peters</u>, 512 F.3d 787, 788-789 (6th Cir. 2009) (failure to consider a defendant's time served argument was procedurally unreasonable).

The Government simply ignored this argument in its brief. Nowhere does it discuss the failure of the District Court to specifically address Kemache-Webster's health issues in sentencing. As the cited authority provides, where a district judge fails to address a § 3553(a) argument raised by the defendant, the district court commits procedural error rendering the sentence unreasonable. <u>Id.</u>

Furthermore, the Government admits that the District Court failed to address Kemache-Webster's argument regarding the particular sentence given in a case involving similarly situated defendant which was significantly lower. (Government's Brief at p. 54). Nonetheless the Government hypothesized as to the reason for the District Court's failure. Such speculation by the Government is not a substitute for the required reasoned explanation by the District Court why this non-frivolous argument for leniency lacked merit. Thus, the District Court's failure to address Kemache-Webster's argument constituted procedural error. <u>Id.</u>

23

Lastly, although the District Court cited to some of the factors under § 3553(a), it failed to provide any real analysis of those factors sufficient for this Court to perform the reasonableness review required by Gall. As such, Kemache-Webster's sentence is procedurally unreasonable and should be vacated.

## **CONCLUSION**

For the reasons set forth in Appellant's initial brief and those set forth above, Appellant's conviction and sentence should be reversed or, alternatively, vacated and, if remanded, set before a new district court judge.

Respectfully submitted,

SMITH, LEASE & GOLDSTEIN, LLC

By:     /s/ David W. Lease_____
David W. Lease, Esquire
11 North Washington Street
Suite 520
Rockville, Maryland 20850
Phone:        (301) 838-8950
Facsimile:    (301) 838-0322

*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*5,775*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[     ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[     ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>July 2, 2012</u>                              <u>/s/ David W. Lease</u>
                                                                     *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 2nd day of July, 2012, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> LisaMarie Freitas
> OFFICE OF THE U.S. ATTORNEY
> 6500 Cherrywood Lane
> Greenbelt, Maryland  20770
> (301) 344-4433
>
> *Counsel for Appellee*

I further certify that on this 2nd day of July, 2012, I caused the required copies of the Reply Brief of Appellant to be hand filed with the Clerk of the Court.

/s/ David W. Lease
*Counsel for Appellant*